IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ENRIQUE IGLESIAS,<br><br>        Plaintiff,<br><br>v.<br><br>DAVID JOSEPH O'NEAL,<br><br>        Defendant. | Civil No. 16-6291 (RBK/AMD)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Enrique Iglesias' Motion for Summary Judgment (Doc. 85). For the reasons expressed herein, Plaintiff's motion is DENIED.

## I.    BACKGROUND

At the time of the incidents giving rise to this suit, Plaintiff Enrique Iglesias ("Plaintiff") and Defendant David Joseph O'Neal ("Defendant") were both federal prisoners confined at Federal Correctional Institute Fort Dix ("Fort Dix") in New Jersey. (Compl. ¶1.) At Fort Dix, Plaintiff and Defendant were housed in the same four-man housing unit. (Doc. 91 ("Def. Resp.") at 3.) While housed together, Plaintiff and Defendant reportedly disagreed often; they argued about what times were appropriate for friends to visit the cell, the volume level at night, cell phone usage, and the volume of people patronizing the pizza business Defendant operated out of the cell. (Doc. 85-6 at 2–4.)

On January 15, 2016, Defendant reported to prison staff pursuant to the Prison Rape Elimination Act ("PREA") that Plaintiff had sexually harassed him in their cell the previous night.

(Def. Resp. at 3.) Specifically, Defendant alleged that Plaintiff "had awoken the [D]efendant early that morning and demanded the [D]efendant provide him with oral sex." (Doc. 85 ("Pl. Mot.") at 3.) Defendant alleges that, when he refused, Plaintiff "threw a garbage can around the cell" and "screamed and yelled angrily," causing Defendant to be "fearful for his health, well-being, and his very life." (*Id.*)

As a result of Defendant's PREA report, prison staff removed Plaintiff from the unit he shared with Defendant and placed him in the Special Housing Unit, where he remained until February 26, 2016. (Def. Resp. at 3; Pl. Mot. at 6.) The prison investigated Defendant's allegations by having prison psychologists conduct a series of interviews with both Plaintiff and Defendant. (Pl. Mot. at 5, 10.) Plaintiff has consistently maintained that he never acted in a sexually inappropriate manner towards Defendant, and argues that Defendant only filed the PREA report because he disliked sharing a room and wanted Plaintiff gone. (Pl. Mot. at 21–22.)

Similarly, during all interviews but one, Defendant maintained that his report was true and that the events had actually occurred. (Def. Resp. at 3; Doc. 102 at 20–21.) In the outlier interview, conducted on January 26, 2016, Defendant "admitted his original allegation against [Plaintiff] was false," and that he made "false allegations against [Plaintiff] because he was afraid of [Plaintiff] and wanted him removed from the room." (Doc. 102 at 20–21.) Before and after that interview, however, Defendant has consistently maintained that his PREA report was truthful. (Def. Resp. at 3.)

Prison staff ultimately made a final determination that the "case was Unfounded which means [Plaintiff] did not commit the act." (Doc. 85-3 at 4.) The investigation found "no staff or inmate witnesses" and cited "the lack of CCTV cameras at FCI Ft. Dix" to ultimately conclude that there "was no evidence discovered during the course of this investigation to corroborate

2

O'Neal's claims" in his PREA report. (Doc. 102 at 20–21.) Despite this conclusion, Defendant maintains that his version of events is true. (Def. Resp. at 3.)

After the official determination was made, Plaintiff sought to have the accusation removed from his file, but prison officials reportedly told him that it could not be expunged. (Pl. Mot. at 1.) They did, however, add a note to Plaintiff's file on September 9, 2016, noting that the accusation was unfounded and Plaintiff did not commit the act. (Doc. 85-3 at 4.) Additionally, the prison did not raise Plaintiff's "at risk" level as a result of the allegations. (Doc. 102 at 8.) Plaintiff nonetheless contends that any mention of a PREA allegation in connection with his record could still "negatively impact [him] upon [his] release from prison," and has caused him "anxiety, shame, humiliation, and other distressful emotions." (Pl. Mot. at 1–2.)

In October 2016, Plaintiff filed this case *pro se* in federal court, alleging defamation, invasion of privacy via false light, and intentional infliction of emotional distress.[1] Plaintiff now moves for summary judgment on all claims.

## II. LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

---

[1] Plaintiff's Complaint does not explicitly lay out these causes of action; however, upon screening Plaintiff's Complaint and application to proceed *in forma pauperis*, the Court has construed Plaintiff to be alleging these causes of action. (Doc. 3.) Plaintiff appears to agree, as his present motion for summary judgment specifically alleges these three claims. (Doc. 85 at 1–2.)

3

'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in his favor. *Id*. at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

#### A. Defamation

Under New Jersey defamation law, "the plaintiff bears the burden of establishing, in addition to damages, that the defendant '(1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff.'" *Petersen v. Meggitt*, 969 A.2d 500, 507 (N.J. Super. Ct. App. Div. 2009) (quoting *Feggans v. Billington*, 677 A.2d 771, 775 (App. Div. 1996)).

Plaintiff claims that all elements are met, arguing that the record unquestionably shows Defendant knowingly filed a false PREA report accusing Plaintiff of engaging in sexual misconduct. (Pl. Mot. at 22.) Defendant argues that summary judgment is inappropriate because genuine issues of material fact exist that preclude a grant of summary judgment. (Def. Resp. at 4.)

4

Specifically, Defendant argues that Plaintiff actually did engage in sexual misconduct. (*Id.*) He notes that he "has maintained from the outset that his claim was true," and has consistently provided sworn interrogatories that support his allegation. (*Id.*)

Thus, the issue here lies in the third element of a defamation claim: falsity. For this Court to grant summary judgment for Plaintiff, it would have to make a factual finding that Defendant's statements to prison officials about Plaintiff sexually harassing him were false. Plaintiff argues that this fact is not genuinely in dispute, claiming that the evidence in the record proves his version is true. (Pl. Mot. at 14.) After examining the documents in the record, the Court cannot agree.

As support for his version of events, Plaintiff includes affidavits from Fort Dix inmates. (Doc. 85-6.) These affidavits describe the arguments between Plaintiff and Defendant over room etiquette, and detail the inmates' belief that Defendant fabricated the PREA report. (*Id.*) Plaintiff also includes the account from a psychologist who states that Defendant admits he made up the allegations. (Doc. 102 at 20–21.)

However, portions of the record cut in favor of Defendant. For example, several of the inmate affidavits report that Defendant feared Plaintiff, even requesting that other inmates act as "security" for him.[2] (Doc. 85-6 at 5, 14.) Additionally, reports by prison staff and Defendant's own accounts consistently detail Defendant's adamance about the truth of his allegations. (Doc. 85-2 at 2; Doc. 102 at 29–36; Doc. 106 at 1–2.) Thus, although Plaintiff may have a noteworthy amount of evidence indicating that Defendant's statements were false, Plaintiff's evidence is not entirely uncontradicted such that summary judgment would be appropriate. The overall evidence could allow a reasonable jury to reach either outcome. For example, though prison staff concluded

---

[2] The affidavits also state that Defendant had no legitimate reason to be afraid of Plaintiff; however, they nonetheless state that Defendant had expressed fear. (Doc. 85-6 at 5.) It is a credibility determination whether the fear Defendant expressed was genuine.

5

Defendant's PREA report was "unfounded," a jury could still find that Defendant was telling the truth, but that the prison was simply unable to corroborate his allegations. Alternatively, a jury could find that Defendant was in fact lying in his report.

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. *BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Accordingly, because a material dispute of fact exists as to whether Defendant lied on his PREA report, Plaintiff's motion for summary judgment as to the defamation count is denied.

**B. Invasion of Privacy via False Light**

To state a claim for the tort of false light, a plaintiff must allege: (1) placement in a false light that would be highly offensive to a reasonable person and that (2) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1116 (N.J. 2009). "The publicized material in a false-light claim must constitute a 'major misrepresentation of [plaintiff's] character, history, activities, or beliefs.'" *Romaine v. Kallinger,* 537 A.2d 285, 295 (N.J. 1988) (citation omitted).

The Court must also deny summary judgment on this count. Finding the second element—knowledge or reckless disregard as to falsity—would again require finding that Defendant's statements were actually false. As explained above, this kind of credibility determination is appropriate for the Court to engage in at the summary judgment stage. *BMW, Inc.*, 974 F.2d at 1363. Plaintiff's motion for summary judgment is thus denied as to the count of false light invasion of privacy.

### C. Intentional Infliction of Emotional Distress

To prove a claim for intentional infliction of emotional distress, a plaintiff must show: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's emotional distress; and (4) plaintiff's emotional distress was "so severe that no reasonable man could be expected to endure it." *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988) (quoting Restatement (Second) of Torts § 46 cmt. j (Am. Law Inst. 1965)). To be extreme and outrageous, a plaintiff must show that the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts, § 46 cmt. d (Am. Law Inst. 1965)).

Summary judgment must also be denied on this last count. The Court would first need to find that Defendant "intentionally or recklessly" made false allegations in order to assess if those allegations were "extreme and outrageous." *Buckley*, 544 A.2d at 863. As previously explained in the context of defamation and false light, determining whether Defendant's allegations were false is an issue of fact that "is not merely disputed, it is hotly contested and central to this cause of action." (Def. Resp. at 4.) Accordingly, Plaintiff's motion for summary judgment is denied on this count.

### IV. CONCLUSION

Granting summary judgment for Plaintiff on any of his three counts would require this Court to decide a disputed issue of material fact. As this decision is inappropriate at the summary judgment stage, Plaintiff's motion for summary judgment (Doc. 85) is DENIED. An accompanying Order shall issue.

Dated: 1/27/2020                                             s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge